McManus, Appellant, v. Philadelphia.

*Municipalities—Municipal contract—Estimate—Bid.*

A city invited bids for a contract for the fills and cuts in grading a street. A survey had been made by the city surveyor and bidders were informed by the city authorities of the estimated number of cubic yards required. When the plaintiff, the successful bidder, applied to the bureau of highways for information as to the character and quantity of the work, he was sent to the office of the district surveyor, where he was directed to the bulletin on the wall which announced the quantity of cut and fill that would be required. His bid to do the work at a certain price per cubic yard was submitted on the information so furnished him and the contract was awarded to him. After the acceptance of the bid, but before the contract was executed, the city surveyor made another and secret survey which resulted in an estimate of about one third less cubic yards than the former survey. This survey was subsequently found to be erroneous, and the first one correct. When the contract was prepared and offered to the lowest bidder it contained these words: "It is further distinctly understood and agreed that the total amount to be paid for the work done under this contract shall in no event exceed" an amount stated. This amount was slightly in excess of the cost of the number of cubic yards of the later and erroneous survey at the contract price per yard. The contractor's attention was not called to this limitation, and relying on the information which he had received as to the estimates of the first survey, he executed the contract. The contract did not state any number of cubic yards. The work actually done was in excess of the estimates of the first survey. *Held*, that the contractor was entitled to recover from the city for the full number of cubic yards of work done by him, notwithstanding the limitation in the contract.

Though contracts with a city may be required by law to be in writing, they are nevertheless subject to reformation for fraud, accident or mistake. A municipality cannot profit from either of these in connection with a written contract with it. Whatever may be its rights and privileges, it does not have this advantage over an individual. Equity treats them alike.

*Execution—Stay of execution—Judgment—Equity.*

In entering judgment for the plaintiff on the law side of the court, it is not proper for the court to stay the execution during the pendency of an equity suit between plaintiff and another party as to the ownership of the fund. In such a case the proper practice is for the defendant to ask for a rule on the plaintiff to show cause why leave should not be granted to pay the money into court in discharge of the judgment.

Argued Jan. 25, 1905. Appeal, No. 345, Jan. T., 1904, by plaintiff, from order of C. P. No. 1, Phila. Co., Dec. T., 1898, No. 545, sustaining exceptions to referee's report in case of Michael McManus v. City of Philadelphia. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Reversed.

Exceptions to report of George W. Harkins, Esq., referee. The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to report of referee and in staying the execution pending the equity suit.

*F. B. Bracken*, for appellant.—The contract in respect to the limitation clause did not correctly express the intention of the parties as to limit of amount to be paid plaintiff, and should be reformed on the ground of mutual mistake: Jenks v. Fritz, 7 W. & S. 201; Marvin v. Bennett, 8 Paige (N. Y.), 312; Martinsburg Bank v. Telephone & Supply Co., 150 Pa. 36; Lee v. Taylor, 154 Pa. 95.

*Harry T. Kingston*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee.—Under the provisions of article 14 of Act of Assembly June 1, 1885, P. L. 37, " All contracts relating to city affairs shall be in writing, signed and executed in the name of the city:" Malone v. City of Philadelphia, 147 Pa. 416; Hepburn v. Phila., 149 Pa. 335.

The defendant could not be bound by any statement or actions of an official prior to the execution of the contract of May 7, 1897, and much less could it be bound afterwards by any attempted change or alteration of its terms: McManus v. Philadelphia, 201 Pa. 619, 632.

It was clearly within the province of the court below to

make the order staying the execution : Whipple v. Fire Assn., 3 W. N. C. 259 ; Adams v. Mortland, 13 W. N. C. 221.

*John G. Johnson*, with him *George R. Van Dusen*, for intervenor.—By virtue of the assignment by McManus to Watson the money due by the city on the contract, the subject-matter of this suit, became the property of, and was payable to, Watson. Of this the city had notice by the bill in equity filed against it praying for an injunction enjoining it from paying over the sum recovered in this suit.

If it allowed judgment to be entered, an execution to issue and thereunder payment was made to McManus, it thus having notice of Watson's claim, would be liable to pay again to him : Philadelphia v. Lockhardt, 73 Pa. 211 ; Adams v. Mortland, 13 W. N. C. 221 ; Whipple v. Fire Assn., 3 W. N. C. 259.

The proper practice is for the defendant to petition the court to restrain the execution in the proceeding at law, and not as appellant contends to seek relief in equity.

Equity will not grant relief where defendant has had opportunity and has neglected to avail himself of it in his suit at law : Given's App., 121 Pa. 260 ; Gordinier's App., 89 Pa. 528 ; Frauenthal's App., 100 Pa. 290 ; Haneman v. Pile, 161 Pa. 599.

OPINION BY MR. JUSTICE BROWN, April 10, 1905 :

There is no dispute about the facts in this case. They are distinctly found by the referee, and his findings were not disturbed by the court below.

In March, 1895, Walter B. Jones, who was then surveyor of the ninth survey district of the city of Philadelphia, in compliance with a request from the bureau of highways, made estimates, under a survey previously made by him, of the amount of fill and cut that would be required in grading Lincoln avenue to the established grade between Wayne and Green streets. By his survey, and his calculations and estimates based on it, he found that 74,339 cubic yards of fill and 1,190 cubic yards of cut would be required in the grading of the avenue. These estimates were regularly entered in the estimate book in the office of the surveyor, and, with

the plans and cross-sections accompanying them, formed the official record of the survey of the avenue between the points named. In July of the same year Jones was succeeded by Joseph C. Wagner as surveyor of the district, who was filling the office when the case was before the referee.

In November, 1895, eight months after Jones had made his estimates, the bureau of highways advertised for proposals for the grading of Lincoln avenue, between Wayne and Green streets. The plaintiff applied to the bureau for information as to the character and quantity of the work, and was sent by the chief clerk to the office of Wagner, the district surveyor, where he was directed to the bulletin on the wall, which announced the quantity of cut and fill that would be required. The estimates on the bulletin were those which had been made by Jones in the previous spring, and had apparently been verified and accepted or adopted by Wagner, his successor, who testified that " they were the estimates upon which the contractors got their information for the purpose of bidding." They were, therefore, at the time the plaintiff applied for information, as found by the referee, " the official figures on which any contract was then to be based." On them as a basis the plaintiff submitted his bid of forty-nine cents per cubic yard for the work, being the lowest of several bidders.

On May 7, 1897—nearly eighteen months after his bid had been submitted—the appellant was notified by the city solicitor's department that a contract for grading Lincoln avenue " according to your bid of 1895 " was ready for execution, and four days later a notice came to him from the bureau of highways to " proceed at once with the work of grading Lincoln avenue from Wayne avenue to Green street, under the contract awarded you 11/19/95."

Between the date of the plaintiff's proposal and that of the notice to him that the contract was ready for execution and that he should proceed with the work, without any information having been given to him, and without his knowledge, according to his uncontradicted testimony, Wagner made a resurvey of Lincoln avenue between the points stated. This resurvey was made in the month of April, 1897, and resulted in an estimate of 52,469 cubic yards of fill and 1,656 yards of cut—a difference in the estimate of fill an-

nounced on the bulletin in the surveyor's office at the time of the plaintiff's bid in November, 1895, of nearly 22,000 cubic yards. Utterly unaware of this resurvey and this change of quantity, plaintiff signed the contract upon which this suit is brought. There is no reference in it, or in the specifications, or the plaintiff's proposal attached to it, to the quantity of cut and fill required, but it was undoubtedly drawn on the basis of the resurvey by Wagner, as it contains a limitation or contract price in the following words: " It is further distinctly understood and agreed that the total amount to be paid for the work done under this contract shall in no event exceed the sum of $26,000." This amount is slightly in excess of the cost of 52,469 cubic yards at forty-nine cents per yard. The plaintiff's attention was not called to this limitation, and, relying on the notices he had received that his bid of November 19, 1895, had been accepted, which was based on the estimates of over 74,000 cubic yards at that time published on the bulletin in the office of the surveyor, he assumed that the contract price was in accordance with the information given him by the city, and signed the contract without noticing the stipulation. The first knowledge he had of the limitation on the sum to be paid for the whole work was after he had started on it, when he called the attention of surveyor Wagner to the discrepancy in the price according to the stipulation, and asked whether the whole street was to be graded as originally advertised for. He was told that he was to grade it all, and, relying upon this assurance, he went on and completed his contract, using and filling in for that purpose 77,000 cubic yards of earth by actual cartage measurements.

The resurvey and the calculations by Wagner were clearly erroneous and grossly inaccurate. What may account for the great discrepancy between the calculations and estimates of the two surveyors, Jones and Wagner, is not important, though discussed by the referee, for his finding is that the survey, calculations and estimates of Jones were correct, and those of Wagner were not. Nor need we consider the contention of the plaintiff before the referee, that there was a scheme by certain subordinate municipal officers to compel the appellant to withdraw as the lowest bidder, or to punish him if he did not. The finding is that he furnished and used 77,000 cubic

yards of fill in grading the avenue, and the single question is whether the referee was right in his legal conclusion that, under the facts found, the plaintiff should be paid for the same at the rate of forty-nine cents per yard, which was his bid, or the court below, which filed no opinion, correctly held that, though the contract itself provided he should receive that sum per cubic yard, he is limited in recovering to a little over two thirds of what he ought to receive by the yard, because there was a stipulation that the total amount to be paid should not exceed $26,000.

Though no reason was given by the court for overruling the referee's conclusion that the plaintiff ought to be paid for the work actually done at the cubic yard price agreed upon, it is to be assumed the city's contention was sustained, that the plaintiff had not, by a contract in writing, established his right to recover what he claimed. "All contracts relating to city affairs shall be in writing, signed and executed in the name of the city," are the words of the Act of June 1, 1885, P. L. 37 ; and there can be no recovery from the city of Philadelphia on a contract that is not in writing. No attempt to make it liable on contractual relations not established, as directed by the mandatory words of the statute, has yet succeeded, and none will succeed while it remains the written law. This is so well known that none of our cases on the subject needs be cited.

But there is a contract in writing here, and the claim of the plaintiff is not for anything that he did not do under it. He is not asking to be paid for extra work, or for compensation for anything that he did for which the contract does not provide, and the two cases of McManus v. Philadelphia, 201 Pa. 619 and 632, chiefly relied on by the city, are not in point. On May 7, 1897, the city notified the plaintiff that a contract was ready for execution by him according to his bid made in 1895. On the same day he executed it, and in it the city agreed to pay him forty-nine cents per cubic yard for cut and fill. Here are the clearly expressed intentions of both parties that the work should be done by the cubic yard and the promise of the city to so pay for it; and, with absolutely no knowledge by the appellant of the changes in the estimates that had been erroneously made by the surveyor, Wagner, he signed

the contract, innocently relying, as he must have relied, on the estimates correctly made by Jones. He saw in the contract that he was to be paid forty-nine cents per cubic yard and is presumed, of course, to have seen the stipulation which followed, that in no event should the sum to be paid under the contract exceed $26,000. If he had stopped and made a calculation, he would have discovered the great discrepancy. But was he bound to do so, if in all other respects the contract expressed what, under the undisputed facts, he was justified in regarding as the real intention and agreement of the city and himself, that he should do the work by the cubic yard and be paid forty-nine cents for each yard of fill or cut? He actually used 77,000 cubic yards of earth, which was about the quantity he expected would be required under the estimates submitted to him, and it would be unconscionable to permit the city to say, in the face of its concealment from him of the erroneous estimates made on the inaccurate survey by Wagner, that the stipulated maximum price based on these inaccuracies is not a mistake and he is bound by it. This being so, the plaintiff stands on a written contract with the city, not to be altered, varied or departed from, but, to put it mildly, to be reformed for a mistake. If not reformed for that reason, it manifestly will not give expression to what, under the facts, the city is estopped from saying ought not to be regarded as the real intention and agreement of the parties to it. In a very satisfactory opinion this is substantially what the learned referee decided, and in his conclusion we concur. Though contracts with the city of Philadelphia must be in writing, they are subject to reformation for fraud, accident or mistake. A municipality cannot profit from either of these in connection with a written contract with it. Whatever may be its rights and privileges, it does not have this advantage over an individual. Equity treats them alike.

On the same day that the judgment was directed to be entered the city presented a petition for an order to prevent the plaintiff from collecting it until the claim of James V. Watson for the amount due on it was passed upon in a proceeding on the equity side of the court. Apparently with no notice to the plaintiff of the presentation of this petition, an order was made staying execution on the judgment until the final disposi-

tion of the equity suit.   This cannot be regarded as regular. When the judgment was entered it was the duty of the city to pay, and if there was another claimant for the fund, the proper practice would have been to ask for a rule on the plaintiff to show cause why leave should not be granted to pay the money into the court in discharge of the judgment.   In disposing of such rule the court could make the proper order for the protection of the claimant.

All of the assignments are sustained and the record is remitted with direction that judgment be entered for the plaintiff on the report of the referee, with leave to the city to ask for a rule to show cause why it should not be permitted to pay the money into court.