## Strode v. Ackerman.

(Decided January 24, 1911.)

## Appeal from Logan Circuit Court.

1. Writing Purporting Sale—Failure to Designate Property, Where property intended to be sold is in no wise described in the writing, and is only indicated therein by the word "it" such writing contains nothing from which it may be known what property was meant by the word "it" and is not enforcible.

2. Sale of Land—Identification in Writing—Validity.—To compel a specific enforcement of a contract for the sale of land, where the land to be sold is in no manner identified in the writing, would be simply to enforce a verbal contract for the sale of the land.

BROWDER & BROWDER for appellant.

S. R. CREWDSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

C. W. Strode brought this suit against Joanna Ackerman to compel her to convey to him two tracts of land which he alleged he had bought from her. The circuit court sustained a demurrer to the petition and he declining to plead further, dismissed it. From this judgment he appeals.

Joanna Ackerman is the mother of Strode's wife. The only writing evidencing the contract set up in the petition is a letter from Mrs. Ackerman to Mrs. Strode which deals with a number of social matters and her daughter's baby, and then contains these words:

"I know she (the baby) must be the prettiest thing in that country for she was as pretty as a pink when she was here, and I know that she is prettier now but I am like you I would not wean her as long as I could help it. I am the biggest fool about that in the world I reckon. I always hated to wean a child much less a baby. Tell the boys if they are not nice and good and kind to their little sister that I never will send them any more books nor anything else, but tell them I believe they will be, and if they are not you will write me word about it. Tell them I want to see them awful bad. I did not know that I didn't have any more paper than this till I went to write so will have to write fast in order to get through

before it gives out. Well, now about Pete's question, I had thought that I would not take less than six hundred dollars for it under any circumstances only that you all would come out here, but I laid awake and studied about it last night, and I knew that at my death that Joe and Minnie would try hard to get it or half of it any way, and I think that they have had their share. They might get half of it or cost you half of it to keep them from getting it so I knew if you all had bought it and had a deed to it they could do nothing so you may tell him that I will take three hundred and fifty dollars for it and knock off both years rent. That is the best that I can afford to do. If he decides to take it at that I guess Tom can attend to it for us. That is if he will and I will make you this promise that I will try to save that three hundred and fifty dollars, so that you can have it back at my death, but of course I don't know what is before me, I may have to spend it, but I will save it for you if I can."

He alleged that Pete was a nickname for him; that previous to the writing of the letter he had in writing offered the defendant $350 cash, she to cancel the two years' rent claim for the two tracts of land, and that the defendant accepted the offer and bound herself by the writing above referred to to sell the property on those terms. It will be observed that the property is in nowise described in the writing, and is only indicated by the word "it."

To compel a specific execution of a contract for the sale of land where the land to be sold is in no manner identified in the writing would be simply to enforce a verbal contract for the sale of the land. The writing contains nothing from which we may know what property was meant by the word "it." To hold such a writing good would be to dispense with all description of the thing sold in the writing. We had practically the same question before us in Ray v. Talbott, 23 R., 572, and Wortham v. Stith, 23 R., 1882, and there held a similar writing insufficient. A contrary rule was not laid down in Moayon v. Moayon, 114 Ky., 885, or in Hyden v. Perkins, 119 Ky., 188. In the Moayon case the language of the writing was: "All my estate, real, personal or mixed of whatever kind or nature." This conveyed everything that the vendor had and parol evidence might be admitted to show what he had. In Hyden v. Perkins the property sold was described as a farm of about 20 acres known as the Vaught farm, and parol evidence was held admissible to identify the thing thus described

generally. But in the writing before us there is no general description of the thing sold.

Judgment affirmed.