## McMee v. Henry.

(Decided March 23, 1915.)

### Appeal from Fayette Circuit Court.

1. Contracts—Statute of Frauds.—While under the Statute of Frauds a contract for the sale of real estate can not be enforced unless some memorandum thereof is in writing, yet it can not be said to be void, but merely voidable.

2. Reformation of Instruments—Rule as to.—The rule of reformation assumes a writing as a basis, and on that basis courts of equity, under proper pleadings and satisfactory evidence, will reform or write into the contract that part of it which the parties intended to write into it, and which they omitted by oversight or mistake.

3. Contracts—Description—Statute of Frauds.—The necessity for a description of the thing sold in a written contract does not come from the statute of frauds, it comes from the common law on contracts, and a contract may be reduced to writing and meet all the requirements of the statute of fraud, and still be unenforcible for lack of definiteness.

4. Reformation of Instruments—Statute of Frauds—When Cannot be Invoked.—In an action to reform a contract for sale of real estate and to enforce the same as reformed, it is alleged that by oversight and mistake of the parties, the description was omitted, held, that where the case comes up on demurrer, the oversight and mistake are admitted and the statute of frauds can not be invoked.

5. Reformation of Instruments—Fraud or Mistake.—To entitle one to reformation, the fact of mistake or fraud must be established by evidence of the most clear and convincing character, but that requirement is fully met by a demurrer which admits the mistake.

S. S. YANTIS and J. P. JOHNSTON for appellant.

GEORGE C. WEBB and JOSEPH S. BOTTS for appellee.

Opinion of the Court by Judge Nunn—Affirming.

This case arises over a simple and uncontroverted state of facts. The appellant brought a suit to recover $200 which he had previously paid to appellee. He alleged that the money was paid without any consideration, and that appellee wrongfully retained and refused to repay it. Appellee answered and averred that he rightfully held the money, and that it was paid to him for a valuable consideration. In explanation of the payment he sets up and files this written contract:

"October 25, 1913.

"A contract entered into this day between Michael Henry of the first part and William McMee of the second part, said William McMee agrees to pay the sum of $1,550.00 cash in hand as soon as the deed is examined to be satisfactory, also agrees to give check for $200.00 immediately to bind contract.

"W. M. McMee,
"Rose McMee,
"M. L. Henry."

It is further stated in the answer that the appellee owned a house and lot in Lexington, fronting 50 feet on Third Street, and running back 106 feet, and that on October 25th, 1913, he agreed to sell it to appellant for $1,550, $200 of which was paid in cash at the time, and the balance to be paid as soon as the deed to the property was examined and found satisfactory. He says that the parties were without experience in the preparation of contracts and land transfers, and they requested a third party to act as draftsman of the contract, and that this third party, who seems to have been equally lacking in experience, and more so in practice, by oversight and mistake omitted from the writing the thing sold; that is, a description of the house and lot. It is alleged that the purpose and intent of the contract was to evidence a sale of the house and lot and describe it, but by mutual mistake of the parties, they signed the contract with such matters omitted from it. It is alleged that pursuant to the contract appellant paid the $200—the $200 that he sues to recover—and that in a reasonable time the appellee and wife prepared, signed and acknowledged a good and sufficient deed conveying the property to appellant; tendered it to him, and demanded payment of the $1,350 balance. Appellee prayed to have the writing reformed so as to express the oral agreement and for an enforcement of it as reformed. Appellant demurred to

the answer, and the court adjudged that the contract be reformed, and that appellant be required to accept the deed and pay the purchase money, and appellee was given a lien on the house and lot to secure it.

It will be observed that the contract recites that appellant has paid $200, and agreed to pay the balance, "as soon as deed is examined to be satisfactory." Ordinarily, a deed is understood to be a writing by which lands are conveyed, but if the word as used in the contract is not given that significance, then the contract is silent as to its purpose. No description is given of any land intended to be conveyed by it, although to read the contract leaves one under the impression that something has been omitted which the parties intended to insert. In other words, the contract shows on its face that it is incomplete, and not as intended.

As above indicated, the case comes to us on demurrer to the answer, so we have the state of facts there set up standing as admitted. It, therefore, appears that there was a contract for a sale of the house and lot on Third Street in Lexington, with a definite and well understood boundary, and that these things were left out of the contract by oversight and mistake of the draftsman and the parties thereto; and that appellee not only agreed to convey it for the consideration named, but tendered a good and sufficient deed, and the question presented is, whether or not the court can reform the writing and enforce it conformable to the admitted intent of the parties.

Appellant contends that the contract is nothing more than an oral agreement for the sale of land, and that the court cannot reform it and give it the force of a written instrument, although it is admitted that the things necessary to give it force were omitted by oversight and mistake. The argument of appellant is based on the idea that the written memoranda is void by reason of indefiniteness and lack of description or mention of the land, and being void there was nothing to reform. In our opinion, this position cannot be successfully maintained.

While a contract for the sale of real estate cannot be enforced, unless some memoranda thereof is in writing, yet it cannot be said to be void. The parties could execute the contract nevertheless, and they usually do. Such contracts are voidable and not void.

But in this case there was a written memorandum of the contract signed by the parties to be charged, relating apparently to real estate, and it is admitted that it did relate to real estate of a certain and definite boundary. The contract, as written, was unenforcible, not because it was within the statute of frauds, but because it was indefinite, and it was indefinite by reason of the mistake of the parties and the draftsman, and the question presented is, whether, under such circumstances, a court of equity has a right to reform the contract, and, having reformed it, to enforce it in conformity to the contract orally agreed upon and attempted to be reduced to writing. The principles upon which courts of equity proceed in such cases are well stated in the case of Bronston's Admr. v. Bronston's Heirs, 141 Ky., 640:

"The reformation of the instrument is neither to make a new contract for the parties, nor to alter or add to the one they had made. It is to correct the evidence of the contract so as to conform it to the truth. It is to make the memorial of the fact conform to both what was intended and agreed upon. Every written agreement must have been preceded by some kind of oral negotiations or purpose. When the minds meet, because so required to be done by the law to be effectual, or for convenient evidence of it, it is reduced to writing, which is said to be the contract. But if, perchance, by mistake of the parties a part of that which was agreed to is omitted from the writing, it is not in truth the contract. To enforce it as such would be to disappoint the parties, and to miscarry them into a conclusion which neither contemplated, and which neither would have wittingly entered into. It may be, therefore, reformed, although one of the parties subsequently refuses consent or is dead, so as to express the actual agreement."

Appellant relies upon the cases of Usher's Ex. v. Flood, 83 Ky., 552; Ray v. Talbott, 23 K. L. R., 572, 64 S. W., 834; and Strode v. Ackerman, 133 S. W., 767, but they are not in point as we view the case. They were suits for specific performance. Such contracts as were alleged, were clearly within the statute of frauds; there was no claim of fraud or mistake, nor that such a contract existed as was susceptible of reformation.

In the first case, by an oral gift, Usher put Flood in possession of certain land. The only written evidence of the gift was a letter in which Usher used this lan-

guage: "I will give you a house and furnish it." There is no pretence that the parties had any other form of contract in mind, or that anything was left out of the contract by oversight or mistake. The court held that while the gift or contract was not enforcible, still it was not void.

The Ray case was a suit for specific performance and not one to reform a writing. The contract consisted of a proposal and acceptance by letter, and, "his (Ray's) house and lot" was the only reference to or description of the realty involved. The letters stated all that the parties intended to say, and there was no question of oversight or mistake in the case.

The Strode case is of the same character, and the court held that the contract could not be specifically enforced, because it was impossible to determine what property was intended to be sold or conveyed.

But it is argued that to allow reformation of the contract in this case would destroy the doctrine of mutuality, and abolish the statute of frauds, for it would sanction proof of a contract by oral testimony when the statute of frauds requires such contracts to be in writing. It is sufficient answer to this contention to say that by the statute of frauds no contract for the sale of real estate is enforcible unless "some memorandum or note thereof, be in writing, and signed by the party to be charged therewith." There is a written contract or memorandum in this case signed by the parties and from which it appears that the parties intended to assume mutual obligations, and these obligations apparently related to real estate. The contract is defective, not because there is no written memorandum, but because the memorandum is indefinite, for, if in fact, it did relate to land, the writing does not describe or explain what land it refers to. It is clear from the contract that Henry intended to sell something, and McMee intended to buy it. Just what that thing was, the writing does not say. If it was left out of the writing by oversight or mistake of the parties, then either party has a right to supply the deficiency upon satisfactory evidence of what was left out. The right to reform is not given to the vendee alone—the cases we shall refer to later show that the courts recognize the rights of both parties to have the instrument reformed so that it will express the real contract made between them. It cannot, therefore, be said

that this right of reformation destroys the doctrine of mutuality. Of course, an oral contract for the sale of land, although the parties intended to reduce it to writing cannot be written out for them by the courts, nor can it be reformed, because that would result in the courts making contracts for the parties. The rule of reformation assumes a writing as a basis, and on that basis the court, under proper pleading and satisfactory evidence, will reform or write into the contract that part of it which the parties intended to write into it, and which they omitted by oversight or mistake. In other words, courts of equity will give effect to the contract as the parties.intended the writing should express it.

Neither does supplying description conflict with the statute of frauds. The necessity for description does not come from the statute; it comes rather from the common law on contracts. Without a description the contract is too indefinite for enforcement. The statute of frauds does not prescribe the form for contracts, nor does it affect the fundamentals of a contract other than to require that contracts for the sale of land be reduced to writing. But such a contract might be reduced to writing and meet all the requirements of the statute of frauds as written, still be unenforcible under the law of contract for lack of definiteness. And that is the case we have in hand. There is a written memorandum signed by the parties, but for want of description of the thing sold it is so indefinite that it cannot be enforced in its present condition. But it is admitted by the demurrer that it.does not express the contract which the parties orally agreed upon, and attempted to put in writing. That is, appellee agreed to sell, and the appellant agreed to pay the consideration named for a certain piece of real estate on Third Street. He avers that this was omitted from the contract by oversight and mistake of the draftsman and the parties. He does not seek to enforce the contract as it stands, for that would be impossible. He asks to have the contract reformed because of the oversight and mistake. We have reached the conclusion that there is abundant reason and authority for affording the relief requested, and that the statute of frauds cannot be invoked against it.

The rule is clearly stated in Pomeroy s Equity Jurisprudence, page 870:

"Whether a contract is executed or executory, the plaintiff may introduce parol testimony to show mistake or fraud whereby the written contract fails to express the whole agreement, and to prove the modifications necessary to be made. Whether such violations consist in limiting the scope of the contract or enlarging it and extending it so as to embrace land, or other subject matter which had been omitted through fraud or mistake, and that he may obtain a specific performance of the contract thus varied, such relief may be granted, although the agreement is one by which the Statute of Frauds is required to be in writing."

A leading case in this State is Worley v. Tuggle, 4 Bush, 168, where there is an elaborate discussion of the question. And in upholding the power of courts of equity to reform a written contract for fraud or mistake, notwithstanding the Statute of Frauds, the court used this language:

"Whatever may be said as to the danger of admitting parol or extraneous evidence to contradict, alter or add to a written instrument, it is now settled by such an overwhelming current of authority, both in American states and England, that this may be done when, through mistake, oversight or fraud, the written memorial does not truly set out the contract, as scarcely to be regarded as no longer an open question."

The court, in referring to the justice of the case, says:

"After a long struggle in which honesty, good faith and integrity were attempting to free the administration of justice from fraud, chicanery and unconscientious advantages to be obtained through a too strict adherence to the very salutary rule of evidence, the true philosophy of the rule was determined perfectly consonant with the just stability of written instruments, and the strictest integrity by admitting the above named exceptions. But, as those willing to avail themselves of unconscientious advantages are always seeking with watchful vigilance to secure such benefits, by either rules of property or of evidence, the next great struggle in which integrity, honesty and fair dealing had to meet the same wary, watchful chicanery, in attempting to protect its unconscientious advantages under the rules of law, was upon the statutes of frauds and perjuries, which substantially declare, among other things, that no suit should be

brought against the party to be charged for any sale of real estate, &c., unless upon some memorandum, in writing, signed by him.

"The developing science of the law, and its ever waxing love of justice, increasing the omnipotence of the chancellor for equitable purposes, soon settled that this statute in no wise modified the above named exception to the rule of evidence, nor curtailed the equitable jurisdiction of the courts."

The question arose again in the case of Noel's Ex. v. Gill, 84 Ky., 249. In that case the vendee claimed to have purchased four certain town lots, but averred that by fraud or mistake two of the lots were omitted from the conveyance, and he sought to have the deed reformed to include the two omitted lots. In granting that relief, the court said:

"Whether parol evidence offered to correct the writing on account of fraud or mistake shows the verbal contract to be broader than the written instrument—covering more, or a different subject matter, or enlarging the terms—or is narrower than the written instrument, either in the terms or subject matter of the contracts, courts of equity will grant relief by reforming the contract so as to prevent fraud or mistake. The statute of frauds, in granting such relief, is not violated, but 'is uplifted,' that it may not perpetuate the fraud that the Legislature designed it to prevent. (See Pomeroy's Equity Jurisprudence, Section 867, and the authorities there cited.)

"Also the majority of this court, in the case of Worley v. Tuggle, &c., 4 Bush, 168, held the same doctrine. The same view has also been held since then by all members of this court. We adopt them now as correct."

In Logan v. Langdon, 145 Ky., 601, the court recognized the right of the party to mainain an action in equity for reformation of a written contract on the ground of mistake and in the same action to ask for the enforcement of the contract as reformed.

In Gregory v. Copeland, 32 K. L. R., 1153, Gregory agreed to convey by one boundary two distinct surveys of land, one containing 29 acres and the other two, but by mistake the two-acre survey was not included in the boundary and not conveyed by the deed. The court reformed the deed so as to make it include both surveys.

If, as suggested by Mr. Pomeroy in his work on

Equity Jurisprudence, Section 866, and as authorized by the Noel and Gregory cases, *supra,* the doctrine can be thus applied to deeds which have actually conveyed the title, *a fortiori,* may it be applied to mere executory contracts which do not disturb the legal title.

Of course, to entitle one to a reformation, the fact of mistake or fraud must be established by evidence of the most clear and convincing character. But that requirement is fully met by the demurrer in this case which admits the mistake.

The judgment of the lower court being in harmony with the principles above stated, it is affirmed.

The whole court sitting.