[Civ. No. 3974. First Appellate District, Division One.—November 8, 1921.]

F. B. McKEVITT et al., Respondents, v. THE CITY OF SACRAMENTO (a Municipal Corporation), et al., Appellants.

[1] MUNICIPAL CORPORATIONS — CITY OF SACRAMENTO — REFERENDUM PROVISIONS OF CHARTER—APPLICABILITY.—The provisions of the charter of the city of Sacramento relating to the referendum are applicable only to ordinances and resolutions which constitute an exercise of legislative power, and cannot be invoked to annul or delay executive conduct.

[2] ID.—LEGISLATIVE AND EXECUTIVE POWER—DISTINCTION.—Acts of a municipal body constituting a declaration of public purpose and making provision for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power, while acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.

[3] ID.—OFFER OF SALE OF LANDS FOR PUBLIC PARK—ACCEPTANCE BY CITY COMMISSION OF SACRAMENTO—ADMINISTRATIVE ACT.—The acceptance by the city commission of the city of Sacramento of an offer to sell certain lands for a public park under a trust provision in a will leaving money to the city to be expended for the purchase of ground suitable for a public park and for its equipment, involved the exercise of an administrative function, and was not subject to a referendum vote of the electors.

[4] ID. — ADMINISTRATION OF FUND — DUTY OF CITY COMMISSION. — Under a trust provision in a will authorizing and empowering the mayor and board of trustees of the city of Sacramento to expend

a sum of money bequeathed in trust to the city in the purchase of ground suitable for a public park and its equipment, the city commission, which under the present charter is the successor of the mayor and board of trustees, is charged with the duty of the administration of the fund, and their acts are not proper subjects of referendum.

[5] ID. — REIMBURSEMENT OF CITY FOR EXPENDITURES OF EXISTING PARK—UNWARRANTED APPLICATION OF BEQUEST.—A provision in a will bequeathing a sum of money in trust to the city of Sacramento and authorizing the mayor and board of trustees to expend so much of the bequest as might be necessary for the purchase of ground suitable for a public park and the balance in property equipping the same for park purposes was violated by the act of the city commission in attempting to use the bequest to reimburse the city for money spent in the purchase and improvement of a park already in existence.

[6] ID.—MUNICIPALITY AS TESTAMENTARY TRUSTEE—DUTIES.—A city may accept a trust bequeathing money to be expended by it for a public park, and when the trust is accepted it assumes the same obligations and becomes amenable to the same regulations as apply to other trustees of such trusts, and among them is the obligation to administer the fund in accordance with the expressed wish of the testator.

[7] ID.—OFFER AND ACCEPTANCE OF LANDS FOR PARK—SUFFICIENCY OF DESCRIPTION.—Descriptions of lands contained in an offer of sale thereof to the city of Sacramento for a public park and contained in the resolution of acceptance of the offer, which gave three boundaries, the aggregate acreage, and the acreage of the various parcels and the names of the owners, were sufficient, since the property could be readily identified by a competent surveyor with reasonable certainty.

[8] ID.—LOCATION OF LANDS—STATE AND COUNTY—SUFFICIENCY OF DESCRIPTION.—Where a written communication offering the sale of a park site to the city of Sacramento is dated "Sacramento, California" and is addressed to "The Honorable City Commissioners, Sacramento, California," and tenders to them, "as the legal representatives of the city of Sacramento," the land in question to be devoted to park purposes, and such facts, with the references in the description to roads, a street, and property owned by the city, manifestly indicate that the description deals with property in the state of California, in or adjacent to the city of Sacramento, the description is not to be held insufficient because the body of the description fails to locate the property in any particular state or county.

[9] ID.—OFFER AND ACCEPTANCE—STATUTE OF FRAUDS—SUFFICIENCY OF MEMORANDUM.—Where the city of Sacramento, through its commission, by resolution duly adopted and spread upon the minutes,

signed by the president of the commission, and attested by the city clerk, accepted a written offer of sale of lands for a park, and the parties making such offer accepted a counter-proposition to accept Victory bonds in payment, instead of cash, there was a sufficient memorandum signed by the parties to be charged to satisfy the statute of frauds.

[10] ID. — CONTRACT WITH MUNICIPALITY — REFORMATION FOR MISTAKE—DESCRIPTION IN CONTRACT OF SALE.—Contracts by or with a city may be reformed for mutual mistake, the same as contracts between individuals; and where a description of real property contained in a contract of sale between individuals and a city is found to not properly describe the property intended to be sold, and was inserted therein by mutual mistake, it is within the province of the court to revise the contract.

[11] ID.—SPECIFIC PERFORMANCE—INJUNCTION—PREVENTION OF BREACH. Where, in an action for the specific performance of a contract of sale of lands to a city by individuals, it is found that a contract exists which is capable of being specifically performed, it is proper to prevent the breach of the contract by the city by an injunction.

[12] VENDOR AND VENDEE—TIME NOT OF ESSENCE—TITLE OF VENDOR —TIME.—Where time is not of the essence of a contract of sale, and there is a positive agreement to buy and not a mere option depending upon the sufficiency of the showing of title, it is enough if the vendor is in fact the owner in fee, unencumbered, at the time of the performance, or at the time of the decree.

[13] ID. — REASONABLE TIME TO PERFECT TITLE. — It is within the jurisdiction of the court to allow the vendor in a suit for specific performance a reasonable time within which to perfect his title where time is not of the essence of the contract and to do so will not work an injustice to the vendee.

[14] EQUITY—DETERMINATION OF ENTIRE CONTROVERSY.—When a court of equity has once obtained jurisdiction, it will do complete justice by deciding the whole case and determining the whole controversy.

APPEAL from a judgment of the Superior Court of Sacramento County. Wm. M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

---

13. Allowance to vendor of reasonable time to perfect title in suit for specific performance, notes, **Ann. Cas.** 1912A, 323; 30 **L. R. A.** **(N. S.)** 25.

J. W. S. Butler, B. F. Van Dyke, Ben P. Tabor and R. L. Shinn for Appellants.

Devlin & Devlin for Respondents.

WASTE, P. J.—The plaintiffs instituted this action against the City of Sacramento, and the city commissioners of that municipality, to reform and to enforce a purported contract for the purchase by the city of a tract of land for park purposes. They also sought an injunction to restrain the defendants from expending the proceeds derived from a certain bequest in any other manner than in accordance with the terms of the contract alleged to exist. The trial court entered an interlocutory decree in favor of the plaintiffs as prayed for, and defendants have appealed.

The undisputed facts in the case, set out in the complaint and embodied in the findings, disclose that William Land, by his last will and testament, bequeathed a sum of $250,000 to the city of Sacramento, in trust, to purchase a public park within a suitable distance of said city, to be known and called "William Land Park," title to which should be vested in the city. The will authorized the mayor and board of trustees, which was the existing form of city government of the city of Sacramento at that time, to expend so much of the bequest as might be necessary for the purchase of ground suitable for a public park, and to expend the balance of the fund in properly equipping the same for park purposes. In the process of administration of the estate of the decedent, the bequest was reduced to $211,250, which amount on final distribution was paid to, and accepted by, the city of Sacramento for the uses for which it was bequeathed, and the city entered upon the administration of the trust. Thereafter, and in response to a published invitation by the city for proposals for a site for the establishment of the William Land Park, the plaintiffs in this action made a written offer to convey to the city certain lands, the purchase price of which was the sum of $146,836.45. These lands did not belong to plaintiffs, but comprised several contiguous parcels of land belonging to various individuals from whom the plaintiffs had obtained options to purchase.

On January 8, 1918, the city commission, which is the present form of government of the city of Sacramento,

and successor to the mayor and board of trustees, as provided in the old charter of the city, passed resolution No. 1266, accepting the offer of plaintiffs, and proposing to pay for the lands with United States Victory bonds, in which the Land bequest had, in the meantime, been invested. A copy of the resolution was transmitted to plaintiffs, who accepted the offer of the commission by filing with the city clerk a writing to that effect. Thereupon the plaintiffs exercised the options held by them on the lands offered to the city for the park in order to be in position to transfer the property in accordance with their contract. Subsequently a purported petition in referendum was filed with the city clerk, requesting that the resolution of acceptance, No. 1266, be reconsidered, and if not repealed on reconsideration, that it be submitted to the referendum vote of the electors of the city. The commission did not annul its former action, but eventually submitted the matter of the purchase of a park site to a referendum vote by resolution of the commission, which recited that such action was taken on the petition theretofore filed. At the election the tract of land submitted by plaintiffs, and accepted by the city commission, was rejected.

At the time William Land made his will, and continuously ever since, the city of Sacramento owned a number of parks, one of which, Del Paso Park, is situated about seven miles northeast of the city and outside its corporate limits. Upon the rejection by the electors of the offer of the plaintiffs, the city commission passed a resolution, No. 1348, by which it decided to expend the William Land fund in reimbursing the city of Sacramento for all sums theretofore paid by the city for the purchase and permanent improvement of Del Paso Park, and that the balance of the fund be used for the improvement of that park. The resolution further provided that the funds derived from the city thus reimbursing itself be placed to the credit of the board of park directors, to be expended by it as were other park funds. The city attorney was directed to take steps to carry out the purpose and intent of the resolution, and to prepare an ordinance changing the name of Del Paso Park to William Land Park.

Plaintiffs thereupon commenced this action to enjoin the city of Sacramento and the city commission from expend-

ing the William Land fund in the manner directed by this last resolution, and from diverting or using the fund except in accordance with the contract entered into between themselves and the city. They also sought to have the contract reformed and corrected by the insertion therein of proper descriptions of the real property, which was the subject matter of the agreement. A further prayer of the complaint was for such other, further, and different relief as might be meet and proper in the premises. The defendants demurred generally, and interposed the bar of the statute of frauds. The demurrer was overruled, answer was made, and the case proceeded to trial.

The court by its interlocutory decree revised and corrected the contract by the insertion therein of the proper description of the real property, restrained and enjoined the defendants from carrying out the purposes of the resolution whereby the William Land fund was diverted to reimbursing the city for the purchase and equipment of Del Paso Park, and from using or diverting any of the fund of the trust except in accordance with the city's contract with plaintiffs. Certain conditions as to abstracts of title, time within which to examine the same, and report any defects of title or objections, and the removal of defects of title, and examination and tender of deeds, are also provided for in the decree. It was further ordered that plaintiffs receive as the purchase price of the lands United States Victory bonds to the amount of the purchase price, as agreed to by them in accepting the counter-offer of the commission at the time of the tender of the property for park purposes.

On this appeal from the judgment the defendants assail the ruling of the lower court on the demurrer to the complaint, and interpose a number of objections to the interlocutory judgment entered in favor of the plaintiffs. Some of them, particularly those relating to the admission of certain maps, and objections made to evidence of matters of record, and other rulings on the admission of evidence, are more or less technical and may be dismissed with the suggestion that even were the contentions of the appellants correct, no conceivable injury resulted to their case by reason of the rulings complained of. The ultimate conclusion in the matter rests upon the consideration of two vital propo-

sitions: *First*. Did the matter of the purchase of a site for the William Land Park involve the exercise of legislative power, thereby rendering it subject to referendum, or was it merely administrative, or executive in character? *Second*. If the question was not one that might be referred to the electors, did the transaction between the plaintiffs and the city commission result in a contract capable of reformation and specific performance? A number of more or less immediate contentions, corollary to the main issues, will be disposed of by the determination of the two questions suggested and need not be specifically considered.

After the city commission had by affirmative action accepted the offer of the respondents to transfer the park site to the municipality the matter was submitted, by referendum, to the qualified electors of the city. The decision of a majority of the voters was against the acceptance of the site. The appellants take the position that the whole controversy was concluded by the result of that referendum election. There can be no question that if the acceptance of the offer of the respondents to sell a park site to the municipality was an act involving the exercise of legislative power, and if that question was legally submitted to a referendum and rejected, the respondents have no standing in court.

Several questions present themselves in this connection. It is urged by the respondents in the first place that the proceedings under which the purported referendum election was held were fatally defective in certain jurisdictional matters. In the second place respondents contend that the acceptance by the city commission of the offer of the park site was only an administrative or executive act, and, therefore, not subject to a referendum vote of the electors. Appellant's answer to the first proposition is that, even though the attempt to initiate a referendum by petition may have failed, the city commission was authorized by the provisions of the Sacramento city charter to submit to the electors of its own motion any ordinance or measure that it might have the authority to enact. (Sacramento City Charter, sec. 271.) To the second proposition they answer that while convinced that the action of the commission relating to the park site was purely legislative in character, it makes no difference whether it was or not, for, under the section of the charter noted, any proposition, or measure, either legislative or ex-

ecutive, may be submitted to a referendum vote. **[1]** We are of the opinion, however, that the provisions in the city charter relating to the referendum should be held applicable only to ordinances and resolutions which constitute an exercise of legislative power. To allow the referendum to be invoked to annul, or delay, executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of the city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. (*Hopping* v. *City of Richmond,* 170 Cal/ 605, 611 [150 Pac. 977, 979].) The charter of Sacramento contains no ''clear declaration to the contrary,'' any more than did the charter of the city of Richmond, which was considered in that case.

This brings us to a consideration of the question whether or not the act here involved was done in the exercise of legislative power or was merely administrative or executive in character.

An exhaustive consideration of the whole subject and a clear analysis of the distinction to be drawn between the legislative and administrative or executive power of a municipality is to be found in the decision of our supreme court in the case of *Hopping* v. *City of Richmond, supra.* Acts constituting a declaration of public purpose, and making provision for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. **[2]** Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence. **[3]** As we view it, the proposal of the respondents to the city commission involved only administrative functions. Whether or not the city of Sacramento should acquire a public park and the necessity of making some provision for the means of paying for it became moot questions when the city accepted the trust imposed upon it by the will of William Land. By that acceptance the city became charged with the duty of the administration of the trust in strict accord with the terms of the instrument cre-

ating the fund. The money was distributed to the city
"pursuant to the 28th provision of the Last Will and Testament of said deceased," which, by its express terms, authorized and empowered "the Mayor and Board of Trustees of
said City to expend so much of said sum as may be necessary for the purchase of ground suitable for a public park,
and to expend the balance of said fund in properly fixing up
said grounds as a public park." [4] We think it plain
that the city commission, which under the present charter
of the city of Sacramento is the successor of the mayor and
board of trustees under the form of city government in existence when the will was made, is charged with the duty
of the administration of the William Land park fund. Their
acts in this regard were, and are, only incidental to the execution of the legislative policy and purpose implied from the
acceptance of the trust fund, and were not proper subjects
of referendum. This seems the only logical conclusion to
reach in the matter. Any other deduction would render
possible an entire omission to carry out the real purpose of
the trust. That may well be illustrated in the present case.
[5] It is hardly to be conceived that William Land contemplated that the money he provided for the express purpose of purchasing and equipping a public park for the
use of the people of Sacramento, to be and remain a monument to his name and public spirit, should be completely diverted from that purpose to reimbursing the city for money
spent in the purchase and improvement of a park it already
had. Had he so intended he would have said so in his will.
The contemplated action on the part of the commission
amounted, in our opinion, to a clear violation of the terms
of the' trust. [6] That a city may accept a trust such as
that created by William Land, and may act as trustee and
execute the trust, does not admit of doubt. It is equally
well settled that when the trust is accepted the city assumes
the same obligations, and becomes amenable to the same
regulations as apply to other trustees of such trusts. Among
them is 'the obligation to administer the fund in accordance
with the expressed wish of the testator. (*Maxcy* ·v. *Oshkosh,*
144 Wis. 238, 250 [31 L. R. A. (N. S.) 787, 128 N. W. 899,
905, 1136]; *Higginson* v. *Turner,* 171 Mass. 586, 591 [51
N. E. 172]; 3 Dillon on Municipal Corporations, 5th ed., par
982; *Estate of Robinson,* 63 Cal. 620, 623.) For these

reasons we believe the city commission was well within the exercise of its administrative powers when it attempted to purchase a site for the William Land park, and may not be hampered, in the absence of fraud and abuse of its powers, in the execution of the trust, and then only in the manner usual for the prevention of an abuse of the trust. For like reasons we deem it inexpedient to consider further the alleged illegality of the referendum proceedings. The conclusion we have reached, that the question of the acceptance of the park site offered by the respondents was not a matter subject to referendum, renders further discussion of the question unnecessary.

We have examined the provisions of the charter of the city of Sacramento dealing with the power of the city to accept gifts and bequests for the acquisition of public parks, the disposition to be made of such funds, and the relation of the board of park directors of the city thereto. We are satisfied that they bear no relation to the facts of the present case. We express no opinion as to their general application to gifts and bequests not coupled with the imposition of an express trust.

This brings us to a consideration of the question: Was there a contract capable of reformation and specific performance? Neither the writing by which the respondents offered the various tracts of land to the city nor the resolution of the city commission accepting the same contained an adequate description of the various parcels of land comprising the park site. Appellants argue, therefore, that the transaction between the respondents and the city did not ripen into an enforceable contract, because not containing a proper description of the subject matter of the agreement. They contend, first, that there is no contract for the sale of real property, (Civ. Code, sec. 1624, subd. 5), and, second, that the terms of the agreement are not sufficiently certain to make the precise act which is to be done clearly ascertainable. (Civ. Code, sec. 3390, subd. 6.) **[7]** The description in the communication to the commission reads: ''The property embraced in this offer lies immediately north of the Sutterville road and extends from Freeport road, or the extension of Twenty-first street, on the East, to Tenth street on the West, a portion of it lying immediately east of the property now owned by the city, upon which the

Pumping Plant stands, and comprising 238.26 acres, more or less, in the entire offering.'' This is followed by a statement of the names of the owners of each of the respective tracts comprising the proposed site, and the number of acres in each tract. The resolution of the commission, which formerly accepted the tender of the respondents, in its preamble refers to ''the site offered by George Swanston and F. B. McKevitt, lying between the Freeport road and Twenty-first street on the East, and Tenth street on the West, and being easterly of the property now owned by the City of Sacramento at Sump No. 2, being 238.26 acres.'' These descriptions of the land offered, and accepted for park purposes, give three boundaries and the aggregate acreage of the land. The owners of and the acreage in the various parcels making up the tract are also given. The property might be readily identified by a competent surveyor, with reasonable certainty. When that is possible, either with or without the aid of extrinsic evidence, the description is sufficient. (*Best* v. *Wohlford,* 144 Cal. 733, 738 [78 Pac. 293]; *Thompson* v. *McKenna,* 22 Cal. App. 129, 132 [133 Pac. 512]; *Hall* v. *Shotwell,* 66 Cal. 379, 381 [5 Pac. 683]; *Mann* v. *Taylor,* 49 N. C. 127 [69 Am. Dec. 750].) If it ever became necessary to establish the sufficiency of the description it might be shown by extrinsic evidence, not for the purpose of adding to or varying the description contained in the contract, but for applying the description to that part of the surface of the earth which is the subject matter of the agreement. In such cases, whether or not such evidence is sufficient to show that the land can be identified with reasonable certainty, is a question of fact for the trial court. (*Houghton* v. *Kern Valley Bank,* 157 Cal. 289, 292 [107 Pac. 113]; *Thompson* v. *McKenna, supra.*)

[8] The body of the description of the land fails to locate the property in any particular state or county. The communication offering the park site to the city is dated ''Sacramento, California, December 15, 1917.'' It is addressed to ''The Honorable City Commissioners, Sacramento, California,'' and tenders to them ''as the legal representatives of the City of Sacramento'' the land in question to be devoted to park purposes. These facts, with the references in the description to roads, a street, and property owned by

the city, manifestly indicate that the description deals with property in the state of California, in or adjacent to the city of Sacramento. (*Horton* v. *Murden*, 117 Ga. 72 [43 S. E. 786, 787]; *Morris* v. *McKee*, 96 Ga. 611 [24 S. E. 142]; *Butler* v. *Davis*, 5 Neb. 521.)

[9] The appellants apparently take the position that no contract between the parties in the instant case, or memorandum thereof, was signed by the parties sought to be charged. In that contention they are mistaken. The respondents made a proposition in writing, signed by them, to sell the land described. The city, through its commission, by resolution duly adopted and spread upon the minutes, signed by the president of the commission, and attested by the city clerk, accepted the offer. A counter-proposition which provided for payment for the land with United States Victory bonds, instead of cash, was accepted by the respondents in a writing filed with the commission. A contract made in such manner as fully satisfies the statute of frauds as if it had been executed by the officers or agents of the municipality, duly authorized. (*People* v. *Board of Supervisors*, 27 . Cal. 655, 678; *Polk* v. *Board of Education*, 7 Cal. Unrep. 170 [74 Pac. 47]; *Argus Co.* v. *Albany*, 55 N. Y. 495 [14 Am. Rep. 296, 300]; *McManus* v. *Boston*, 171 Mass. 152 [50 N. E. 607, 609]; 2 Dillon on Municipal Corporations, 5th ed., par. 783; *Gosport* v. *Pritchard*, 156 Ind. 400, 403 [59 N. E. 1058].)

[10] Contracts by or with a city may be reformed for mutual mistake, the same as contracts between individuals. (*McManus* v. *Philadelphia*, 211 Pa. St. 394, 400 [60 Atl. 1001]; 2 Dillon on Municipal Corporations, 5th ed., par. 780.) By apt amendment to the complaint it was alleged, and the court found, that the agreed selling price for the land is adequate, and that the contract is, as to the defendants, reasonable, fair, and equitable, and was fairly entered into between the parties. We therefore conclude that there was a contract in the instant case sufficient to satisfy the statute of frauds, and one capable of being enforced. Consequently, when it appeared to the satisfaction of the trial court, as found by it, that the description of the real property contained in a contract between the respondents and the city of Sacramento did not properly describe the property intended to be conveyed to the city, and that such description was

inserted in the contract by the mutual mistake of the parties, and under the common belief that it correctly described the entire property and lands, which constituted the subject matter of the agreement, it was within its province to revise the contract, and make the instrument express what it was intended to mean and what were intended to be its legal consequences. (Civ. Code, secs. 3399–3402; *Carr v. Howell*, 154 Cal. 372, 376, 377 [97 Pac. 885]; *McMee* v. *Henry*, 163 Ky. 729 [174 S. W. 746, 748].) **[11]** It was also proper for the court, when it determined that a contract existed which was capable of being specifically performed, to prevent the breach of the agreement by injunction. (*Farnum* v. *Clarke*, 148 Cal. 610, 619, 620 [84 Pac. 166].)

The trial court by its interlocutory decree reformed the contract between the plaintiffs and the city by inserting a correct description of the real property offered by plaintiffs as a park site, and enjoined and restrained the defendants from reimbursing the city out of the William Land fund for the purchase price and cost of improvements of Del Paso Park, and from using or diverting any of the funds of the trust in any other manner than under the contract with plaintiffs as reformed. The court went further and included in its judgment several provisions prescribing what should be done by the respective parties in order to render the decree effective. In effect the decree is one specifically enforcing the contract. When the final decree shall be entered the whole matter will be concluded. The court expressly retains jurisdiction of the subject matter of the action and parties thereto, for the purpose of carrying out its interlocutory judgment. Among other things it directed that the plaintiffs should furnish the defendants with abstracts of title to the property contracted for within ten days after the interlocutory decree became final, the defendants to have thirty days after receipt of the abstracts within which to examine the same and report any defects in title or objections thereto. If no defects be reported to plaintiffs in writing within the time limited, plaintiffs must within ten days thereafter tender good and sufficient deeds granting the property to the city of Sacramento. If any defects in title were reported, plaintiffs were to have six months within which to remove the defects or objections. If

any controversy shall arise by reason of its validity or reasonableness, or any objection concerning the title to the property, the court reserved to itself the right to determine the dispute, and the time for removing the defects in title was extended so that the six months period shall not expire until final settlement of the controversy. Appellants object to these provisions in the decree as not being supported by any evidence and not being within the terms of the contract between the parties. [12] Where time is not of the essence of the contract, and there is a positive agreement to buy and not a mere option depending upon the sufficiency of the showing of title, it is enough if the vendor is in fact the owner in fee, unencumbered, at the time of the performance, or at the time of the decree. (*Dore* v. *Southern Pacific Co.*, 163 Cal. 182, 195 [124 Pac. 817]; *Allstead* v. *Nicol*, 123 Cal. 594, 597 [56 Pac. 452].) [13] It also seems to be the general rule that it is within the jurisdiction of the court to allow the vendor in a suit for specific performance a reasonable time within which to perfect his title where time is not of the essence of the contract, as is the fact in this case, and to do so will not work an injustice to the vendee. (*Van Riper* v. *Wickersham*, 77 N. J. Eq. 232 [76 Atl. 1020]. See also, cases cited in Ann. Cas. 1912A, 319; 30 L. R. A. (N. S.) 25, under this case.) In the instant case the time for the final decree has not yet arrived, the present judgment being only interlocutory in its nature and effect.

The court found that the respondents had already expended large sums in securing the options for the property sold to the city, for surveying fees, and other expenses in connection with the matter. It included in its decree a provision that the plaintiffs should receive the purchase price, amounting to $146,236.45, in United States Victory bonds, together with the interest collected by the defendants on the bonds from the nineteenth day of February, 1918, until the transaction be closed, and that in addition the city of Sacramento pay to plaintiffs all taxes and special assessments of every kind accruing against the land during the same period. The appellants object to these provisions in the decree, but we think the court was right in seeking to determine the whole controversy between the parties. [14] When a court of equity has once obtained jurisdiction, it will do complete justice by deciding the whole case and de-

termining the whole controversy. (*Vierra* v. *Fontes,* 135 Cal. 126, 129 [66 Pac. 241]; *Watson* v. *Sutro,* 86 Cal. 500, 528 [24 Pac. 172, 25 Pac. 64].)

For the foregoing reasons we are of the opinion that the action of the trial court in overruling the demurrer to the amended complaint was proper, and that judgment should be affirmed. It is so ordered.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1922.

All the Justices concurred except Lawlor, J., who was absent.