## Acchione v. City of Philadelphia

*Saul, Ewing, Remick & Saul*, for plaintiff.

*Joseph V. Furlong, Jr.*, and *James L. J. Pie*, Assistant City Solicitors, and *David Berger*, City Solicitor, for defendant.

SLOANE, J., June 30, 1958.—Plaintiff, a firm of contractors, was awarded a contract for the construction of a sewer for the City of Philadelphia. It completed the work and in this action sues for a balance claimed to be due under the contract.

The city raised two defenses: (1) That payment in full has been made; and (2) that the amount appropriated for the contract constitutes a limitation on the amount that can be claimed of the city, that all except $2,091.70 of the appropriation has been paid and that plaintiff's claim for anything above that amount (the claim is for $16,952.04 with interest from November 1, 1947) is barred.

The contract in question was for the construction of a large intercepting sewer in Southwest Philadelphia. This sewer was not laid underground, but was placed on the surface. There was no lump sum figure for the contract; the work to be done was priced on a unit basis. The overall appropriation for the contract was $370,000 and all except $2,091.70 has been paid for the work.

The dispute as to the amount due involves proper payment for the item of "embankment." This was to be paid for at the rate of $1.25 per cubic yard. The specific controversy is over the method of calculating the amount of embankment to be measured for pay-

ment. The city paid for 19,844 cubic yards; plaintiff claims it should have been paid for 33,405.63 cubic yards.

The pertinent contract provisions are:

"The price bid per cubic yard for embankment shall include the clearing of the site, removal of existing brick bulkheads, refill, excavation, filling and compacting between the present surface of the ground and the bottom of the sewer, the use of sheathing and shoring, pumping, fluming, cofferdaming and trenching.

"Embankment shall be 22 ft. wide at the top, placed to a depth of 2 feet above the top of the sewer with side slopes of 1½ horizontal to 1 vertical, extending to the original surface of the ground. Payment for embankment will be based upon these lines and any material placed beyond these lines will not be measured for payment.

"Embankment shall be placed and rolled in accordance with Clauses G-6 and 7 of the Standard Specifications.

"Embankment shall be placed over the culverts to a depth of 2 feet, the slopes to be 1 vertical to 4 horizontal.

"Excavation, whether above or below plan depth, will not be paid for as excavation, but shall be included in the price bid for embankment."

Plaintiff claims that under the above provisions a cross section of the proper lines to be used in determining the volume to be paid for as embankment runs as follows: Across the 22-foot width two feet above the top of the sewer, down the sloping sides with the lower ends of the slopes joined by a straight line across at ground level. It is plain that measurement along these lines would encompass the entire volume of the sewer itself.

The city contends that the volume occupied by the sewer, the void within it as well as the material of

which the sewer is constructed, should be excluded in calculating payment for embankment. The city's position is that the proper lines for payment run across the top of the embankment over the sewer, down the sides and back to the sewer itself, but do not include the volume or inside of the sewer. Payment on this basis was made by the city in full.

In considering the pertinent clauses of the contract, we are governed by the ". . . rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument": Neal D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 231; Foulke v. Miller, 381 Pa. 587, 593; Powell Appeal, 385 Pa. 467, 476; Cerceo v. De-Marco, 391 Pa. 157, 162.

Here we are led by the quoted clauses of the contract to the conclusion that the city's position is correct. Plaintiff concedes that ordinarily embankment would mean the fill or material placed over and around the sewer to the required depth. It claims, however, that, under this contract, embankment must be given an enlarged meaning, that here embankment amounts to an omnibus clause in which filling is only one of nine items. But the language is clear to us, that it is not embankment which includes the other items. What does appear is that the *price bid* per cubic yard for embankment has to take into consideration the necessity for the work involved in the other listed items. It serves to put the bidding contractor on notice to arrive at his bid with consideration of the other work that he would be required to do. Obviously, the result is that he had to make his bid higher than he would for fill alone, but nothing in this language enlarges the volume to be measured by adding the volume of the sewer for payment.

The reference to "lines" in the second of the quoted clauses clearly delineates those which are to be occupied by earth or fill. The next portion of the same sentence, "any material placed beyond these lines will not be measured for payment," is still another indication that measurement of volume occupied by material is the basis for payment.

Another clause which shows that embankment should be restricted to its usual meaning of fill or material is: "Embankment shall be placed and rolled in accordance with Clauses G-6 and 7 of the Standard Specifications."

Still another clause provides: "Excavation, whether above or below planned depth, will not be paid for as excavation, but shall be included in the price bid for embankment." Thus, excavation that became necessary was yet another factor for the contractor to consider in arriving at his bid; yet plaintiff does not contend that the volume of any excavation under this clause should be added to the "lines" on which payment should be based.

All these considerations are convincing indications that it is the embankment itself which is to be measured for payment, with the contractor's due consideration in his bid for embankment to the other work required, and that sewer volume should not be added to the lines on which to base payment.

Plaintiff also argues that, even if we do not find the language of the contract so clear as to require the interpretation it urges, we should at least find the language of the contract ambiguous and therefore apply the rule that an ambiguous contract be construed against the one who drew it, in this case, the city: McElhinney v. Belsky, 165 Pa. Superior Ct. 546, 550; A. L. I. Restatement of the Law of Contracts §236 (d).

Plaintiff concedes there is an exception to this rule in favor of municipal corporations where governmental or discretionary functions are involved, but argues that the exception does not apply to proprietary and ministerial functions, citing Sanctis Construction, Inc., Arbitration Case, 158 Pa. Superior Ct. 71; City of Philadelphia v. The Philadelphia Gas Works Co., 49 D. & C. 314. See Helz v. Pittsburgh, 387 Pa. 169; Henry Shenk Company v. Erie County, 319 Pa. 100.

Whatever the rule of construction, it should have no application where construction is not necessary, where the writing is without ambiguity. The writing here is plain in its meaning and we were not faced with the necessity to apply a rule of strict construction against the party who drew the contract.

In view of our holding that full payment under the contract has been made, we did not reach the city's second defense that the amount of the appropriation limited the city's liability under the contract. Plaintiff concedes that the appropriation for the contract ordinarily limits the maximum liability of a municipality, but argues this applies only where specified work is to be done for a lump sum (see the two cases of McManus v. Philadelphia, 201 Pa. 619 and 632; Canuso v. Philadelphia, 326 Pa. 302, 309; Montgomery v. Philadelphia, 391 Pa. 607, 617), with the purpose of preventing collusion between bidders and officials by the subsequent addition of "extras." But plaintiff contends that where, as here, no extras are involved and the contract is for a unit price, rather than a lump sum figure, then the limitation should not be applied and the amount of work actually done paid for at the unit price, citing McManus v. Philadelphia, 211 Pa. 394, 399. However, we did not need to pass upon this argument, nor decide upon the city's second defense, since we found the contract itself unambiguous

and that payment in full for plaintiff's work has been made.