PEPER, Respondent, vs. EVELAND and others, Appellants.

*February 12—March 9, 1937.*

For the appellant Jesse Eveland a brief was filed by *E. Nelton* of Balsam Lake.

*Howard D. Blanding* of St. Croix Falls, for the appellants A. D. Mattson and Edel M. Mattson.

For the appellant State Bank of Centuria there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

For the respondent there was a brief by *Fuller & Lampson* of Cumberland, and oral argument by *F. L. Lampson*.

FRITZ, J.  In connection with their appeal the defendants assigned error in respect to a ruling by the court which denied their motion to strike out an amended complaint filed within the time allowed by an order sustaining a demurrer to a prior complaint.  It suffices to note that we find no prejudicial error in that ruling.

The plaintiff bases his cause of action for specific performance upon an instrument which reads as follows:

APPLICATION TO PURCHASE.

August 15th, 1934.

The undersigned hereby agrees to purchase from Jesse Eveland, one of the heirs of the J. A. Eveland estate, the following described land in Polk County, Wisconsin.

The north Half of the Northeast Quarter of Section Twenty-seven, and the South half of the northwest quarter of section Twenty-six, in Township thirty-five, North, Range Eighteen west, known as the J. A. Eveland farm.

and the undersigned agrees to pay the sum of Thirty-seven Hundred dollars in full therefore, which amount is to be paid as follows:

This application also includes all the personal property belonging to the estate of J. A. Eveland including all crops belonging to the said estate and whatever cash that is on hand as of this date.

Pledge payment...................... $ 50.00
Cash payment........................ 3650.00

$3700.00

Papers are to be in the form of warranty deed and accompanied by abstract of title showing clear title to the premises, . . . such papers to be at the State Bank of Centuria, for execution and delivery by the undersigned on or before sixty days. This agreement becomes a binding contract subject to be specifically enforced by either party, or in case applicant fails to fulfill this contract before the execution and delivery of the formal deed, at the owners option, the pledge payment shall become forfeited by such failure. The payment tendered herewith shall be refunded if the offer is not accepted, otherwise to be applied as part of the purchase price of the premises above described.

WM. PEPER
Purchaser.
JESSE EVELAND
Owner.

Witness
OSCAR W. PETERSON

The $50.00 payment delivered as pledged payment is held in escrow by the State Bank of Centuria, subject to the completion of this deal. If clear title is not delivered to the purchaser the pledge payment is to be returned to the purchaser, otherwise to be made as part of the purchase price.

STATE BANK OF CENTURIA
By OSCAR W. PETERSON, Cashier.

That instrument was subscribed in triplicate by the plaintiff above the designation "Purchaser" and by the defend-

ant Eveland above the designation "Owner," on August 15, 1934; and their execution thereof is evidenced by a notarial acknowledgment, which appears thereon after the signature to the escrow provision on behalf of the defendant bank by Oscar W. Peterson, its cashier. A signed copy thereof was delivered to each of the parties thereto, and the third copy, together with the pledge payment of $50, which was made by the plaintiff, as therein provided, was delivered in escrow to the bank.

The evidence received on the trial warranted the court's findings to the following effect, in respect to the subject matter of that instrument and the acts or conduct of the parties in performance thereof or in relation thereto: The land described therein was a farm, which was owned in 1934 by the defendant Eveland and other heirs of James Eveland, deceased, whose estate was in the process of administration, which necessitated selling the estate's property in order to pay its debts and cost of administration. The bank was a creditor of the estate in the sum of $735.14 and of Eveland in the sum of $302.04, and the latter and Peterson, as cashier of the bank, were endeavoring to effect a sale of the property. Their efforts resulted in the plaintiff and Eveland entering into and executing the instrument of August 15, 1934. To assist the plaintiff in raising the $3,650 required as the balance of the agreed purchase price of $3,700, the loan committee of the bank authorized a loan of $2,000 on a note to be secured by the plaintiff's mortgage on the land in question, and also a loan of $500 on his unsecured note. By September 29, 1934, he had arranged, and it was understood between him and Peterson and Eveland, that the bank considered him entitled to a credit of $3,679.44 at the bank on account of the following amounts for use in making his payment of the purchase price balance of $3,650, to wit, $2,000 on his note and mortgage and $500 on his unsecured note to

the bank; $1,089.44 on deposit in his checking account; $25 on a bank deposit by the Eveland estate; and $65 on a trustee's certificate issued to that estate for its interest in securities segregated under the bank's stabilization agreement. The last two items were considered part of the estate's personal property which the plaintiff was to acquire under the agreement of August 15, 1934. Consequently, Peterson, on September 29, 1934, informed the plaintiff that he could then settle for the purchase price under that agreement, and Peterson wrote a check for $3,650, payable to the order of the bank, with a notation thereon "Bal. in full on purchase of 160 A. Eveland," and had the plaintiff sign and deliver it to the bank, which accepted it for use, together with the $50 escrow payment, in the payment of the agreed purchase price. Then Peterson told the plaintiff, "That is all for you now. Now it is up to Jesse (meaning the defendant Jesse Eveland) to deliver an abstract showing clear title;" and plaintiff asked whether Eveland could furnish an abstract within sixty days. Thereupon Peterson showed the plaintiff a warranty deed to the land, which was executed and left at the bank by Jesse Eveland and wife on September 19, 1934.

Pursuant to an understanding on August 15, 1934, between Eveland and the plaintiff that the latter could fill the silo on the land with the estate's share of the corn growing thereon, as soon as Eveland had obtained deeds from the other heirs of the estate, and a statement by Eveland to the plaintiff on September 15, 1934, that "the farm is yours, and you can go ahead and do anything you want to," the latter filled the silo and did some plowing, sowing, repairing of fences, and was otherwise in possession of a part of the fields until October 16, 1934. Meanwhile, on October 5, 1934, Eveland and Peterson called on Henry C. Oakey, an attorney and abstractor, with an abstract of title and also deeds from all of the estate's heirs, which had been received at the bank,

and the instrument of August 15, 1934. Peterson and Eveland informed Oakey that it had been agreed that when the abstract was extended to date the deal with the plaintiff could be closed by the bank cashing his check for $3,650, out of which it should hold $200 to obtain the discharge of a judgment against Jesse Eveland and $30 for the abstract extension, and send the Eveland heirs their shares the next day. Prior to October 5, 1934, Peterson had asked Oakey whether an indebtedness by Jesse Eveland to the Eveland estate for $110, owing as rent during the administration thereof, was personal property included in the property of the estate which the plaintiff was to acquire under the agreement of August 15, 1934. On October 11, 1934, Oakey sent to Peterson a copy of his written report to the plaintiff regarding his examination of the abstract and defects in the title. In that report Oakey stated that the provision "personal property belonging to the estate of J. A. Eveland" in the agreement of August 15, 1934, would include the $110 debt owing by the defendant Eveland to the estate; but Oakey suggested that the plaintiff sacrifice some of that to enable Eveland to clear the title and close the deal. Peterson showed that report to Eveland, who had discussed the $110 debt with the plaintiff during their negotiations prior to August 15, 1934, but who now claimed that he did not know that the plaintiff thought that item was included as personal property of the estate under the contract. On October 16, 1934, Eveland told the plaintiff that the sixty days mentioned in their agreement had expired and that he would not sell the farm to the plaintiff. On the evening of that day Eveland showed a copy of the agreement of August 15, 1934, to A. D. Mattson and offered and succeeded in selling the land to him at a purchase price of $3,750, without including any personal property. On October 17, 1934, A. D. Mattson, upon inquiring at the bank and also of E. Nelton, the attorney for the administrator of the estate,

was fully informed regarding the agreement of August 15, 1934, and Nelton told him that he thought that there was still life in that contract. Subsequently on that day, Eveland, A. D. Mattson, and Peterson met at the bank, which then promised to loan Mattson such money as he needed to purchase the land, and they again conferred with the administrator and Nelton in relation to the agreement of August 15, 1934. At that conference a deed from Eveland and wife to A. D. Mattson, and a mortgage from the latter and wife to the bank, to secure his note for the $2,000 loan, were prepared, and on the following day those documents were executed by the parties, and then were duly delivered, together with the deeds from the Eveland estate heirs to Jesse Eveland, to the respective grantees, and the bank's check for $3,750 was issued to Eveland in payment of the land.

Until October 18, 1934, the plaintiff believed that his check for $3,650 would be honored and used by the bank for his payment of the balance of the purchase price under the August 15, 1934, agreement, as soon as Eveland completed his performance by delivering a proper abstract of title. The plaintiff was never informed that his check would not be honored, and he never accepted the bank's subsequent proposed cancellation and return of his notes for $500 and $2,000 and his mortgage to secure the latter.

Upon those facts the court concluded that the instrument of August 15, 1934, was a valid and subsisting contract between the parties thereto for the purchase and sale of the land described therein together with all of the personal property belonging to the Eveland estate; that the plaintiff had fully performed his part of that contract prior to October 15, 1934; that Eveland had failed and refused to perform thereunder; that time is not of the essence thereof; and that the plaintiff is entitled to specific performance thereof, and judgment divesting A. D. Mattson and wife of the title to the

lands and transferring the title thereto to the plaintiff upon the terms stated in the court's conclusion. Further conclusions of law, based in part upon facts found in addition to those stated above, were also made by the court, and will be considered after passing upon the defendants' assignments of error and contentions in relation to the foregoing findings of fact and conclusions of law.

The defendants' contention that those findings are contrary to the preponderance of the credible evidence cannot be sustained. A review of the record discloses that they are clearly supported by ample credible evidence, as to considerable of which there is even no dispute.

The defendants' principal contentions in relation to the foregoing conclusions of law are that the instrument of August 15, 1934, was not enforceable as a contract because it was too indefinite and uncertain, and particularly the description therein of personal property. Those contentions likewise cannot be sustained.

Although that instrument is entitled "Application to Purchase," it is clearly more than a mere unilateral application or offer; and the description therein of the land which is being purchased and of the consideration which is to be paid is certainly definite. As the plaintiff signed above the word "Purchaser," and Eveland signed above the word "Owner," it is manifest that the word "undersigned" in the clauses "the *undersigned* hereby agrees to purchase from Jesse Eveland" and "the *undersigned* agrees to pay the sum of thirty-seven hundred dollars, in full therefor" clearly means the plaintiff; and, likewise, that the word "undersigned" in the clause "Papers are to be in the form of warranty deed and accompanied by abstract of title showing clear title to the premises, . . . such papers to be at the State Bank of Centuria, for execution and delivery by the *undersigned* on or before sixty days," clearly means Jesse Eveland. Conse-

quently, without any room for doubt or uncertainty, the plaintiff by signing obligated himself to pay the sums of $50 and of $3,650 as provided in that instrument, and Eveland likewise obligated himself as a vendor to have a warranty deed to the premises, accompanied by an abstract showing clear title at the bank for execution and delivery by him, on or before sixty days, to the plaintiff as the vendee. Considered alone, the clause, "This agreement becomes a binding contract subject to be specifically enforced by either party," may seem incomplete. However, when that clause is considered in connection with the required "pledge payment" of $50, and the provision to the effect that if the offer is accepted, that payment is "to be applied as part of the purchase price of the premises above described," it is obvious that the clause under consideration is but a correct statement of the legal consequence of the contemplated written acceptance by the "owner" of the "purchaser's" signed "application" or offer, and the authorized application, as part of the purchase price, of the latter's pledge payment of $50. And similarly, the provision immediately following the clause under consideration, and which reads, "in case applicant fails to fulfill this contract before the execution and delivery of the formal deed, at the owners option, the pledge payment shall become forfeited by such failure," is but a valid and consistent provision to give Eveland, as owner, the option to retain the pledge payment as a forfeiture if he elected to terminate his obligation to convey because of the plaintiff's failure "to fulfill this contract before the execution and delivery of the formal deed."

In respect to the personal property, there is clearly no room for uncertainty or ambiguity as to the meaning or application of the words, "This application also includes all the personal property belonging to the estate of J. A. Eveland including all crops belonging to the said estate and whatever

cash that is on hand as of this date." The obvious, unequivocal meaning of that provision, in the absence of evidence of any facts or circumstances rendering the application thereof doubtful, is the inclusion in the sale of all personal property which then belonged to the Eveland estate. And the express mention of "all crops," and also "whatever cash that is on hand," merely serve, as a matter of extreme precaution, to avoid any possibility of the doubt which arises at times as to the legal nature and ownership of "crops," or, in the minds of laymen, as to whether the term "personal property" includes "cash." All that was necessary to enforce the contract in relation to personal property was competent evidence as to the surrounding circumstances and situation of the parties at the time it was made so as to enable the court to apply the description therein upon the identification of the subject matter. Parol evidence is admissible for those purposes. 27 C. J. p. 383, § 472. As was said in *Docter v. Hellberg,* 65 Wis. 415, 421, 27 N. W. 176,—

"The law will not declare an agreement void for uncertainty when the light which contemporaneous facts and circumstances furnish renders the description definite and certain. [Citations.] A description which can thus be made certain by proof of an extrinsic fact referred to in the agreement must be regarded as sufficiently certain to enforce specific performance."

So, in applying that rule and principles stated in *Inglis v. Fohey,* 136 Wis. 28, 32, 116 N. W. 857, we held in *Haumersen v. Sladky,* 220 Wis. 91, 96, 264 N. W. 653, that,—

"The application of the provision that the trade price 'includes all personal property and crops, excepting therefrom one fat hog . . . and between twelve and eighteen hens,' and the identification of the subject matter thereof, could be shown by parol evidence, as to the surrounding circumstances and situation of the parties at the time the contract was made."

The description which was then under consideration was by no means as definite and positive as in the case at bar.

The defendants also contend that the plaintiff never complied with the contract in question; and they base that contention on the proposition that he never made a cash payment of the balance of $3,650 or deposited that amount with the bank. Although it is true that he did not actually do that by making a payment or deposit of $3,650 in cash, it is evident, from the facts established by the evidence and found by the court as hereinbefore stated, that he did, within the allotted sixty-day period, duly arrange and provide for sufficient credit at the bank to have the check for $3,650, which he executed and delivered to the bank at its suggestion, honored by it, and that it, in turn had consented to accept and honor that check in full payment of the $3,650, which he was to pay under the contract to the bank as the escrow holder. It appears conclusively that the bank never declined to honor plaintiff's check, and Eveland testified that Peterson had told him that plaintiff had left that check at the bank; that that was satisfactory to Eveland; and that there never was any question raised between him and Peterson as to whether the check was good. Moreover, Eveland never based his refusal to perform on the ground that cash was not tendered to him or the bank, or that the check might not be honored. Instead of asserting any such ground, Eveland when asked by the plaintiff on October 16, 1934, "What is the reason that you aren't going to sell me that farm;" replied, "Because you are trying to get $110 from me that you know I didn't owe,—wasn't to give you."

In connection with the defendants' contention that the plaintiff had not complied with the contract within the sixty-day period, they seek to justify Eveland's refusal to perform by contending that at the time thereof the plaintiff was not entitled to specific performance because the contract was at an end. Those contentions fail because even if there had

been some delay on the plaintiff's part in that respect, it would still not defeat his right to specific performance in view of the court's conclusion, which was warranted by the record, that time was not of the essence of the contract. Under such circumstances there is applicable the rule that, "Where time is not of the essence of the contract and the thing to be done can be as well done at a later as an earlier day without detriment to the party for whom the thing is to be done, the delay will not prevent specific performance." *Hermansen v. Slatter,* 176 Wis. 426, 429, 187 N. W. 177; *Haumersen v. Sladky, supra,* at p. 98. But even if the plaintiff had failed to provide for the $3,650 payment within the sixty-day period, that delay would not have entitled Eveland to arbitrarily refuse, on October 16, 1934, to convey the property to the plaintiff, because, as appears without dispute, Eveland had failed to deliver the abstract, showing clear title, at the bank, as the contract required him to do within the sixty-day period. Until he did that, and the plaintiff had a reasonable time to have the title examined, Eveland was not entitled to receive payment of the purchase price; and upon his arbitrary refusal on October 16, 1934, to convey to the plaintiff, the latter was not required under the facts and circumstances herein to take any steps to perfect performance on his part until Eveland at least offered to perform or the plaintiff had an interlocutory adjudication that he was entitled to specific performance. *Haumersen v. Sladky, supra,* at p. 102.

Defendants also contend that the contract was unfair to Eveland because the property which he contracted to convey to plaintiff was valued at more than $3,700, and that therefore specific performance should be denied. The plaintiff is not charged with any misrepresentation or fraud. It is true that on the trial he valued the property at more than $3,700, and that A. D. Mattson paid $3,750 for the land, without

including the personal property. But the value of the personal property, as found by the court, was but $359, without including Eveland's indebtedness of $110 on the rent item, which the plaintiff did not insist on having Eveland pay. Under those circumstances, there was no such gross disparity between the amounts for which he willingly conveyed to A. D. Mattson, and the amount for which he had contracted to convey to the plaintiff, as to render the latter's contract so unfair, or performance thereof so oppressive that specific performance thereof should be denied.

The defendants further contend that the court erred in the following respects: (1) In finding that by Eveland's refusal to perform his contract with plaintiff and his conveyance of the land to A. D. Mattson, the plaintiff was damaged in the sum of $1,369, by being deprived of the use of the farm for two years, and by the loss of personal property and the crops which Eveland had contracted to convey to him; and that there should be deducted from that amount only $1,067.22 for improvements made and work performed on the farm, and interest and taxes paid by A. D. Mattson during that period; and (2) in concluding that for the balance remaining of the amount of plaintiff's damages after making that deduction, he was entitled to have judgment against A. D. Mattson, Eveland, and the bank for $301.78 and costs. That conclusion was based upon another conclusion, which was made by the court, without any particular findings of fact as basis therefor, that those defendants had conspired together on October 16, 17, and 18, 1934, to prevent the plaintiff from obtaining conveyance of the property in question, and also to secure the conveyance of the land to A. D. Mattson, to the plaintiff's damage. In so far as the court's conclusion as to a conspiracy between the defendants is concerned, it is true, as the defendants contend, that no facts were found by the court, and that evidence would not war-

rant any finding that would support that conclusion. On the contrary, it clearly appears that Eveland intended to perform his contract with the plaintiff until Eveland, on his own accord, concluded from a statement in Oakey's report of October 11, 1934, that the plaintiff would expect payment of the $110 rent item; that, even after Eveland had, without any suggestion from any of the defendants, informed the plaintiff that he would not sell the farm to him, Peterson endeavored to induce Eveland to perform the contract with the plaintiff; and that the bank had no interest in the matter whatsoever, excepting to be paid the indebtedness owing to it by Eveland and the Eveland estate, which it would receive whether the farm was conveyed to the plaintiff or to A. D. Mattson. On the other hand, the latter did not instigate or solicit the sale of the land to him. It was not until after Eveland had told the plaintiff that he would never convey to him that Eveland called on Mattson to induce him to purchase; and Mattson did not agree to do so until after he had verified the fact that Eveland had theretofore absolutely refused to convey to the plaintiff. Under the circumstances there was no conspiracy, and neither the bank nor A. D. Mattson is liable by reason thereof for the plaintiff's damages. However, in so far as Eveland is concerned, there is a failure of consideration because of his inability to deliver now the personal property to the plaintiff, and therefore the latter is entitled to the deduction of the value of that property from the agreed purchase price of $3,700. As the court found, upon credible evidence, that the value of that property was $359, the balance which is now to be paid by the plaintiff for the land is $3,341.

A. D. Mattson also contends that the court erred in concluding that the plaintiff, in connection with having specific performance of his contract, was entitled to have the deed from Eveland and wife to Mattson canceled and set aside. Likewise, the bank contends that the court erred in concluding that Mattson's note and mortgage to the bank for $2,000

should be satisfied by it upon the payment by the plaintiff of the unpaid interest thereon; and in also concluding that the plaintiff's note and mortgage for $2,000 and his note for $500 in favor of the bank be reinstated. Those contentions must be overruled in so far as Eveland's deed to A. D. Mattson, and the latter's mortgage to the bank, are concerned. The plaintiff was entitled to have both of those conveyances canceled because Mattson, as well as the bank, knew of the plaintiff's contract and his equities in the land by virtue thereof, before Mattson contracted to purchase, and either he or the bank parted with anything of value on account of the conveyance of the land to him. Under those circumstances, Eveland's deed to Mattson, and the latter's mortgage to the bank, were subject to the plaintiff's rights under his contract with Eveland (*Haumersen v. Sladky, supra,* at p. 106), and therefore the plaintiff is entitled to the cancellation of those conveyances upon his performing that contract, in so far as the land can still be conveyed to him, upon his paying the sum of $3,341 attributable thereto as consideration.

However, the court erred in adjudicating that A. D. Mattson's note to the bank should be satisfied upon the payment of merely the unpaid interest thereon. As between the latter and the bank that note was and continues to be a valid and subsisting obligation incurred by him in consideration of the $2,000 loaned to him by the bank, and secured by such lien as attaches in its favor, by virtue of his mortgage to the bank on whatever interest he had in the land or on account of the consideration which he paid therefor to Eveland. By reason of that payment Mattson is now entitled to be subrogated to the right which Eveland would have had, but for that payment and his attempted conveyance to Mattson, to receive the remaining consideration of $3,341 which is to be paid by the plaintiff, less any offset to which the latter may be entitled for costs and disbursements taxable in the trial court. In the event of that payment to the clerk of the court

by the plaintiff in performance of his contract, the bank will be entitled to receive out of it the amount owing to it on the principal and interest of A. D. Mattson's note, and he will be entitled to the remainder of that payment.

The court's findings in respect to the amount of the damages sustained by the plaintiff by being deprived of the use of the farm and for trees cut thereon by A. D. Mattson, and also in respect to the amount of the latter's expenditures for materials and labor for repairs and seeding, and for taxes and interest paid while he was in possession of the farm, are warranted by the credible evidence. Under the amounts as found, there is a small balance in favor of Mattson, but as he incurred those expenditures while wrongfully on the land in violation of the plaintiff's rights, there is no occasion to adjudge any recovery or offset on that account in favor of Mattson; and as the value of the farm was apparently enhanced as the result of those expenditures to a greater extent than the amount of the plaintiff's damages by being deprived of the possession thereof, there is likewise no occasion to adjudge any recovery or offset on that account in favor of the plaintiff.

The bank also contends that the court erred in concluding and adjudging that the $500 note, and the $2,000 note and the mortgage to secure the latter, which were executed by the plaintiff on September 29, 1934, in favor of the bank for the loans which it agreed to make to the plaintiff, be reinstated upon the same terms, as subsisting contracts, and that those instruments, together with plaintiff's check of September 29, 1934, for $3,650,—all of which had been delivered to the clerk of the court,—should be delivered to the bank. Those conclusions cannot be sustained. Specific performance does not lie for a breach, if any, of the bank's agreement to make the loans to be evidenced by those notes, or to honor that check. Pomeroy, Eq. Jur. (4th ed.) p. 4888, § 2175; 58 C. J. p. 1055, § 298; *Leach v. Fuller,* 65 Colo. 68, 173 Pac.

427; *Norwood v. Crowder,* 177 N. C. 469, 99 S. E. 345; *Kenner v. Slidell Sav. & Homestead,* 170 La. 547, 128 So. 475; *Steward v. Bounds,* 167 Wash. 554, 9 Pac. (2d) 1112; *Gideon v. Putnam Develop. Co.* 113 W. Va. 200, 167 S. E. 140.

It follows that the judgment must be reversed in so far as it is provided therein, (1) that the plaintiff shall recover $301.78 as damages from the defendants Eveland, A. D. Mattson, and the bank; (2) that the clerk of the court shall deliver to the bank the notes for $500 and $2,000 and the mortgage to secure the latter, and the check for $3,650, which the plaintiff executed on September 29, 1934, and that those notes and mortgage shall be reinstated by the bank as subsisting contracts between it and the plaintiff; (3) that the note for $2,000, dated October 17, 1934, and made and given by A. D. Mattson and wife to the bank, shall be satisfied upon the payment by the plaintiff of the interest unpaid thereon and that upon such payment that note shall be null and void and of no force and effect; and (4) that the plaintiff deposit $1,200 with the bank within twenty days after the entry of judgment. Furthermore, the judgment must be modified in the following respects: (1) By omitting the personal property from the provision as to the specific performance which the plaintiff shall have; thus limiting such performance to the land by the delivery of the deed thereto, which Jesse Eveland and wife executed on Septembeer 19, 1934, to the plaintiff, upon his depositing with the clerk of the court the consideration therefor, amounting to $3,341, less his offset on account of his taxable costs and disbursements in this action; (2) by providing that the vacation and setting aside as null and void of the deed from Eveland and wife to A. D. Mattson, under date of October 17, 1934, and the divesting of all title in A. D. Mattson and wife and all persons claiming under them to the land in question, and also that the satisfaction by the bank of the mortgage which was

executed and delivered by A. D. Mattson and wife to the bank and recorded on October 18, 1934, shall be contingent upon the making of that payment by the plaintiff for the land; and (3) by providing that upon the plaintiff making that payment to the clerk of the court, he shall disburse the amount thereof by paying to the bank the amount owing to it on A. D. Mattson's note of October 17, 1934, for $2,000, and by paying the balance thereof to him.

*By the Court.*—Judgment reversed in part, and modified in part, as stated in the opinion; and affirmed as modified.